FILED

14 JUL 18 PM 4:01

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR CARLOS QUEZADA,<br><br>Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | CASE NO. 13-CV-712-BEN<br>10-CR-3617-BEN-3<br><br>**ORDER:**<br><br>**(1) DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**<br><br>**(2) DENYING CERTIFICATE OF APPEALABILITY**<br><br>[Civil Docket No. 1/Criminal Docket No. 423] |

Petitioner Victor Carlos Quezada moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence of 78 months. (Docket. No. 423 at 1).[1] The Government filed a Response on March 20, 2014. (Docket No. 483). Petitioner did not file a traverse. Because Petitioner validly waived his right to collateral attack and Petitioner's ineffective assistance of counsel claims lack merit, the Motion is **DENIED**.

---

[1] All docket numbers refer to the docket in the criminal case, 10-CR-3617.

## I. BACKGROUND

Petitioner is a citizen of Mexico. In August 2010, Petitioner and others conspired to conduct a robbery of a "stash house," which was protected by two armed guards. (Plea Ag., Gov. Ex. D ¶ II(B)(2)). On August 25, 2010, the co-conspirators drove in five separate vehicles to a vacant building where they discussed how the robbery was to be conducted. (*Id.* ¶ II(B)(3), (4)). Petitioner was arrested that day. Two loaded firearms were seized from one of the vehicles. (*Id.* ¶ II(B)(3); Plea Hr'g Tr., Gov Ex. C at 22:12-14). On April 6, 2011, a five-count superseding indictment was filed in the Southern District of California variously charging the co-conspirators. (Docket No. 113). Petitioner was charged in Count One with violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846, Conspiracy to Possess with Intent to Distribute Cocaine; in Count Two with violation of 18 U.S.C. § 1951(a), Conspiracy to Affect Commerce by Robbery and Extortion; and in Count Three with violation of 18 U.S.C. § 924(c)(1)(A)(i) and 18 U.S.C. § 2, Possession of a Firearm in Furtherance of a Crime of Violence or a Drug Trafficking Offense. (*Id.*)

On December 9, 2011, the Court granted an oral request by Petitioner for appointment of new counsel, relieving Michael J. Messina and appointing Lupe C. Rodriguez. (Docket. No. 306). Ten days later, on December 19, 2011, on this Court's own motion, Lupe C. Rodriguez was relieved and Victor Manuel Torres was appointed. (Docket. No. 324).

On April 23, 2012, Petitioner, represented by Victor Manuel Torres, signed a plea agreement with the United States. (Plea Ag. at 17). The same day, Petitioner pleaded guilty pursuant to the Plea Agreement to Count 2, Conspiracy to Affect Commerce by Robbery and Extortion, and Count 3, Possession of a Firearm in the Furtherance of a Crime of Violence or a Drug Trafficking Offense. (Plea Hr'g Tr. at 18:17-20:25). Petitioner was sentenced to 78 months imprisonment by this Court on September 4, 2012. (Docket Nos. 413, 414). Petitioner did not raise any issues

before the Court regarding the voluntariness of his plea or the effectiveness of counsel. Petitioner filed this § 2255 motion to vacate, set aside or correct his sentence on March 22, 2013. (Docket No. 423).

## II. LEGAL STANDARD

A district court may "vacate, set aside or correct" the sentence of a federal prisoner that was imposed in violation of the Constitution or a law of the United States. 28 U.S.C. § 2255(a). A district court must hold an evidentiary hearing before denying a § 2255 motion, unless it is conclusively shown that the prisoner is entitled to no relief. 28 U.S.C. § 2255(b). However, if it is clear the petitioner has failed to state a claim, or has "no more than conclusory allegations, unsupported by facts and refuted by the record," a district court may deny a § 2255 motion without an evidentiary hearing. *United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986).

## III. DISCUSSION

Review of the record in this matter reveals that Petitioner's claims are barred by his valid waiver of his collateral attack rights, except for his claims of ineffective assistance of counsel. Petitioner's contention that his appointed counsel failed to provide effective assistance fails on the merits.

### A. Waiver of Right to Collateral Attack

As part of the Plea Agreement, Petitioner agreed to waive his right to collaterally attack his sentence. (Plea Ag. ¶ XI). The Ninth Circuit has upheld the validity of waivers of the right to collateral attack a sentence pursuant to § 2255. *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir.), *cert. denied*, 508 U.S. 979 (1993). Waivers in plea bargaining are "an important component of this country's criminal justice system." *United States v. Navarro-Botello*, 912 F.2d 318, 321 (9th Cir. 1990) (citation omitted) (in the context of a waiver of right to appeal). The Ninth Circuit has held that public policy strongly supports plea agreements. *Id.* Plea bargaining saves the state time and money, allowing it to promptly impose punishment without expending resources. *Id.* at 322 (citing *Town of Newton v.*

*Rumery*, 480 U.S. 386, 393 n.3 (1987)). Additionally, and "perhaps the most important benefit of plea bargaining, is the finality that results." *Id.* at 322.

The right of collateral attack in a criminal case is purely statutory. *Abarca*, 985 F.2d at 1014. A waiver of the right to collateral attack will be upheld where it was "knowing and voluntary." *Id.* A knowing and voluntary waiver is enforceable where the language of the waiver encompasses the grounds raised. *See Patterson-Romo v. United States*, No. 10-cr-3319, No. 12-cv-1343, 2012 WL 2060872, at *1 (S.D. Cal. June 7, 2012); *see also United States v. Rahman*, 642 F.3d 1257, 1259 (9th Cir. 2011) (citation omitted) (discussing the right to appeal).

### 1. Knowing and Voluntary

The waiver of a statutory right to challenge a conviction or sentence is knowing and voluntary if the plea agreement as a whole was knowing and voluntary. *See United States v. Jeronimo*, 398 F.3d 1149, 1154 (9th Cir. 2005) (discussing the right to appeal) (overruled on other grounds); *United States v. Portillo-Cano*, 192 F.3d 1246, 1250 (9th Cir. 1999) ("waivers of appeal must stand or fall with the agreement of which they are a part") (internal quotations and citations omitted). A waiver will be considered knowing and voluntary where the plea colloquy satisfies Rule 11, and the record reveals no misrepresentation or gross mischaracterization by counsel that tainted the plea. *See Jeronimo*, 398 F.3d at 1154-55, 1157 n.5 (discussing right to appeal); *Portillo-Cano*, 192 F.3d at 1250. After a careful review of the written plea agreement, the Rule 11 plea colloquy, and the entire record in this matter, this Court finds that the plea and the waiver were knowing and voluntary.

#### a. The Plea Agreement

The Plea Agreement conferred significant benefits on Petitioner. Although he could have potentially faced a potential maximum sentence of life imprisonment for his offenses, the Plea Agreement led the Government to dismiss Count 1 and

recommend a sentence of only 87 months. (Plea Ag. ¶¶ I, X; Plea Hr'g Tr. at 12:4-5; Sent. Hr'g Tr., Gov. Ex. E at 2:14-19, 18:11-23).

In the Plea Agreement, Petitioner admitted the factual basis for his guilty plea, (Plea Ag. ¶ II(B)), and stated that he understood the possible penalties for each count, (*id.* ¶ III). The Plea Agreement contained a waiver of trial rights, (*id.* ¶ IV), and a waiver of the pretrial right to be provided with impeachment and affirmative defense information. (*Id.* ¶ V). Petitioner also agreed to a paragraph which stated:

> By signing this agreement, defendant certifies that defendant has read it (or that it had been read to defendant in defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

(*Id.* ¶ XV). Petitioner signed and dated the Plea Agreement, and initialed each page.

By signing the Plea Agreement, Petitioner represented that he had "a full opportunity to discuss all the facts and circumstances of this case with defense counsel and has a clear understanding of the charges and the consequences of the plea," that he did not receive a threat inducing his guilty plea, and that he was "pleading guilty because in truth and in fact defendant is guilty." (*Id.* ¶ VI). Petitioner also acknowledged that he had consulted with counsel and was satisfied with his representation. (*Id.* ¶ XVI).

Further, the Plea Agreement clearly stated that Petitioner was waiving his right to collateral attack. In relevant part:

> In exchange for the Government's concessions in this plea agreement, defendant waives, to the full extent of the law, any right to appeal or to collaterally attack the conviction and any lawful restitution order, except a post-conviction collateral attack based on ineffective assistance of counsel. The defendant also waives, to the full extent of the law, any right to appeal or to collaterally attack his sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, unless the Court imposes a custodial sentence above the high end of the guideline range recommended by the Government pursuant to this agreement at the time of sentencing.

(*Id.* ¶ XI). This Court did not impose a custodial sentence above the high end of the guideline range recommended by the Government.[2]

### b. Rule 11 and the Change of Plea Hearing

Rule 11 of the Federal Rules of Criminal Procedure requires that before accepting a plea of guilty, the court must address the defendant personally in open court. The court must advise the defendant of, and determine that the defendant understands, certain rights, information, and consequences enumerated in the Rule. FED. R. CRIM. P. 11(b)(1). The court must also determine that a plea is voluntary and did not result from force, threats, or promises other than promises in a plea agreement. FED. R. CRIM. P. 11(b)(2). The court must also determine that there is a factual basis for the plea. FED. R. CRIM. P. 11(b)(3).

This Court reviewed the transcript of the change of plea hearing which this Court conducted on April 23, 2013. (Plea Hr'g Tr.) Petitioner, who was represented by defense counsel, was informed by this Court about the rights he was giving up by pleading guilty. (*Id.* at 8:3-9:20). This Court explained, and Petitioner stated that he understood, the charge, (*id.* at 9:21-11:4), the maximum penalties, (*id.* at 11:5-12:13), the deportation consequences, (*id.* at 15:14-16:2) and the effect of the sentencing guidelines, (*id.* at 13:23-14:16). This Court also specifically inquired about the Plea Agreement. Petitioner stated that he recalled signing and initialing the Plea Agreement, that he had an opportunity to review it with his attorney, that it was translated into Spanish, and that he had no questions about it. (*Id.* at 12:14-13:22). This Court also highlighted the waiver provision and explained its meaning to Petitioner. (*Id.* at 16:3-21). Petitioner stated that he understood the provision. (*Id.*) Additionally, this Court went over the factual basis of the plea, and Petitioner admitted to the relevant facts. (*Id.* at 21:1-24:18). Petitioner affirmed that he was

---

[2] The Government recommended a custodial sentence of 27 months as to Count 2, to be followed by a mandatory 60-month custodial term for Count 3. (Sent. Hr'g Tr. at 2:14-19). The Court sentenced Petitioner to a total of 78 months. (*Id.* at 20:12-15).

pleading to the charges knowingly, intelligently, and voluntarily. (*Id.* at 25:18-21). He stated that he was satisfied with counsel's services, that no one had made any threats to force him to plead, and that no one had made any other promises or representations to him, other than what was set forth in the Plea Agreement and an addendum. (*Id.* at 24:22-25:7). Petitioner's defense counsel also affirmed to this Court that he had discussed the Plea Agreement with his client and believed he understood it. (*Id.* at 17:17-18:16). This Court specifically found that Petitioner had knowingly and voluntarily entered the plea, that he understood the nature of the charges and the consequences of his plea, and that there was a factual basis for the plea. (*Id.* at 25:25-26:4).

After full review of the record, this Court can find no error in the Rule 11 plea hearing. Petitioner has not identified any defect in the hearing which is supported by the record. Although Petitioner asserts that this Court failed to conduct a proper hearing in open court, and did not determine that the plea was voluntary and not the result of threats or promises outside the plea agreement, this is clearly refuted by the record. (Mot. at 2, 16, 21). Further, this Court can find no indication in the record, and Petitioner specifies none, that the plea was involuntary and that this Court needed to conduct further inquiry. (Mot. at 19). Accordingly, this Court concludes that the record shows that the Rule 11 plea hearing was properly conducted, and that Petitioner's claims that the this Court did not comply with Rule 11 are without merit.

### c. Government Coercion

Petitioner alleges that the Government coerced him to agree to the Plea Agreement. (Mot. at 16, 19). To the extent that Petitioner claims that he was coerced because he entered into the Plea Agreement because he faced the risk of a more serious punishment or additional charges if he did not plead guilty, his claim fails. Prosecutors are permitted to impose such difficult choices, and Petitioner has

not sufficiently alleged that this was done in an impermissible fashion. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).

### d. Coercion or Misinformation by the Defense Counsel

Petitioner further argues that his defense counsel coerced Petitioner during the plea process, and failed to provide complete and correct information regarding the Plea Agreement. To the extent Petitioner claims that this renders his plea and the plea agreement involuntary, this argument lacks merit.

Petitioner contends that his defense counsel told him that if he did not agree to the Plea Agreement, Petitioner would receive a twenty-five year sentence or a life sentence. (Mot. at 4, 7). Petitioner's defense counsel has filed a declaration asserting that he discussed the maximum penalties associated with the crimes charged and the possibility of receiving more than fifteen years if Petitioner lost at trial. (Torres Decl., Gov. Ex. A ¶ 7). Counsel states that he never told Petitioner that he would receive a twenty-five year sentence if he did not accept the plea offer. (*Id.*) Defense counsel also asserts that he reviewed each and every provision of the Plea Agreement with Petitioner, that he believes that he provided a certified Spanish interpreter to help Petitioner review the agreement, and that he gave Petitioner time to consider his options. (*Id.* ¶¶ 7-9).

Petitioner alleges that defense counsel falsely represented his case and that said misrepresentation induced Petitioner to agree to the negotiated Plea Agreement. (Mot. at 7). The record in this matter reflects that Petitioner was fully informed by the Court in open court about the maximum penalties and the sentencing guidelines. Petitioner affirmed to this Court that the Plea Agreement had been translated to him before he signed and initialed it. (Plea Hr'g Tr. at 13:8-10). Petitioner was given the opportunity to talk directly to the judge about the charges, penalties, and any questions he had about the Plea Agreement. This Court inquired as to the existence of any threats to Petitioner in order to compel or force him into pleading guilty, and Petitioner responded in the negative. (*Id.* at 25:5-7). Moreover, this Court asked

Petitioner whether his plea was knowing, intelligent, and voluntary and Petitioner responded in the affirmative. (*Id.* at 25:18-21). Petitioner did not allege any coercion by his defense counsel at either the change of plea hearing or the sentencing hearing.

To the extent that Petitioner is suggesting that he was misinformed because Petitioner now believes that he was not guilty of the firearm offense, this claim lacks merit. (*See* Mot. at 11). As will be discussed below, it was not necessary for Petitioner to be responsible for, or to possess the weapon. Defense counsel therefore did not misinform Petitioner regarding the firearm charge.

Petitioner may also have sought to assert that he pled guilty because counsel was not ready to proceed to trial. (*Id.* at 2). However, Petitioner fails to clearly assert or articulate this argument. Additionally, Petitioner had opportunities to raise such an issue before this Court, but did not do so. The Court further notes that Petitioner was aware that he could ask for new counsel, as he had previously done so. (Docket No. 306).

The record indicates that Petitioner pled guilty after receiving accurate information about the potential sentence he faced if he went to trial, and that his guilty plea was knowing, intelligent, and voluntary. Thus, Petitioner's allegation that he was coerced and misinformed is unsupported and contrary to the record.

e. Conclusion

After full consideration of the briefing and the record in this matter, this Court concluded that the waiver of the right to collateral attack was knowing and voluntary.[3]

///

///

---

[3] Petitioner references certain trial rights at length, but does not clearly articulate any argument regarding those rights. (Mot. at 14-15). The Court notes that Petitioner specifically waived his trial rights as part of his plea agreement. (Plea Ag. ¶ IV).

### 2. Within the Scope of the Waiver

Petitioner's claims will be waived if they come within the scope of the provision. Plea agreements are contractual in nature and are measured by contract law standards. *United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir.), *cert. denied*, 531 U.S. 1057 (2000). In interpreting a plea agreement, a court looks to what the parties reasonably understood to be the terms of the agreement. *See United States v. Torres*, 999 F.2d 376, 378 (9th Cir. 1993) (citation omitted).

Based on the clear language of the waiver, all claims except for those based on ineffective assistance of counsel have been waived. The waiver provision of this agreement is broad and clearly covers Petitioner's efforts to challenge this Court's sentence. (*E.g.*, Mot. at 1, 3-4, 8-9, 17). Petitioner agreed to waive his right to collaterally attack his sentence, to the full extent of the law. (Plea Ag. ¶ XI). Therefore, to the extent Petitioner seeks to challenge the calculation of the sentencing guidelines or the appropriateness of the sentence imposed by this Court, he has waived his claim. To the extent Petitioner sought to assert other challenges to his conviction or sentence, except for ineffective assistance of counsel, he has not alleged them with sufficient clarity and they are waived pursuant to the Plea Agreement.

### 3. Conclusion

Upon review of the record in this matter, this Court concludes that the change of plea hearing was conducted in accord with Rule 11, and that Petitioner's claims that Rule 11 was violated are without merit. This Court further determines that the waiver of collateral attack rights was knowing and voluntary, and encompasses all of Petitioner's claims, except for his claims of ineffective assistance of counsel.

### B. Ineffective Assistance of Counsel

#### 1. Legal Standard for Ineffective Assistance of Counsel

In order to prove ineffective assistance of counsel, Petitioner must show: (1) his counsel's performance was deficient, and (2) said deficient performance

1  prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To
2  establish performance is deficient, Petitioner must show that his counsel's
3  representation "fell below an objective standard of reasonableness." *Id.* at 687-688.
4  Because of the difficulties inherent in evaluating the performance of counsel after
5  the fact, a court must indulge a strong presumption that counsel's conduct falls
6  within the wide range of reasonable professional assistance. *Id.* at 689. To
7  demonstrate prejudice, a petitioner must show that there is a "reasonable
8  probability" that "but for counsel's unprofessional errors, the result of the
9  proceeding would have been different." *Id.* at 694. A reasonable probability is a
10  probability sufficient to undermine confidence in the outcome. *Id.* The Supreme
11  Court has concluded that "[an] error by counsel, even if professionally
12  unreasonable, does not warrant setting aside the judgment of a criminal proceeding
13  if the error had no effect on the judgment." *Id.* at 691. A petitioner must assert
14  specific factual support for allegations of ineffective assistance, as conclusory
15  allegations of ineffective assistance of counsel do not state a valid claim of a
16  constitutional violation or entitle a petitioner to an evidentiary hearing. *See Jones v.*
17  *Gomez*, 66 F.3d 199, 205 (9th Cir. 1995).

18        Petitioner bases his ineffective assistance of counsel claim on the failure of
19  his defense counsel to: (1) to challenge the charge pursuant to 18 U.S.C
20  § 924(c)(1)(A)(i); (2) to investigate witnesses effectively; (3) to file pre-trial
21  motions; (4) to conduct a reasonable investigation into a competency defense; and
22  (5) to request safety valve relief under 18 U.S.C § 3553(f). He also appears to make
23  a general allegation that defense counsel was sick and unprepared. Finally,
24  Petitioner appears to suggest that counsel was ineffective in failing to provide him
25  with complete and correct information regarding the Plea Agreement and coercing
26  him into accepting the Plea Agreement.
27  ///
28  ///

### 2. *Failure to Challenge the 18 U.S.C. § 924(c)(1)(A)(i) Charge*

Petitioner alleges that his defense counsel was ineffective because he failed to dispute the charge pursuant to 18 U.S.C. § 924(c)(1)(A)(i), Possession of a Firearm in Furtherance of a Crime of Violence. Petitioner apparently argues that defense counsel should have challenged the charge and contested the enhancement at sentencing because Petitioner believes that he is not guilty of the offense. Petitioner essentially contends that he did not violate the statute because he did not use or possess the gun. (*E.g.*, Mot. at 4-6).

Petitioner's claim fails because Petitioner could violate the firearm statute even if he did not personally use or possess the gun. Under *Pinkerton v. United States*, a person is vicariously liable for reasonably foreseeable substantive crimes committed by a co-conspirator in furtherance of the conspiracy. *Pinkerton v. United States*, 328 U.S. 640, 647-48 (1946). A defendant who is charged with conspiracy may be convicted under a *Pinkerton* theory for a violation of 18 U.S.C. § 924(c), even if it was the defendant's co-conspirator who used and carried the gun. *United States v. Fonseca-Caro*, 114 F.3d 906, 908 (9th Cir. 1997).

Here, Petitioner knowingly and voluntarily pled guilty to the 18 U.S.C. § 924(c)(1)(A)(i) charge in connection with the 18 U.S.C. § 1951(a) charge for Conspiracy to Affect Commerce by Robbery or Extortion. (Plea Hr'g Tr. at 20:5-25). The crime of conspiracy to affect commerce by robbery or extortion is one of violence.[4] The record indicates that Petitioner and his co-conspirators planned to rob a stash house which was under the surveillance of armed guards. (*Id.* at 21:14-22). It would be reasonably foreseeable that the co-conspirators would use or possess firearms in furtherance of the robbery of 100 kilograms of cocaine from a stash house protected by armed guards. Indeed, at the change of plea hearing, the factual basis for the plea was put on the record, and this Court explored this issue

---

[4] Conspiracy to interfere with commerce by robbery is a "crime of violence." *See United States v. Mendez*, 992 F.2d 1488, 1489 (9th Cir. 1993).

with Petitioner. Petitioner agreed with the Court that he was part of a group of people that was going to rob a stash house, and that "in connection with that robbery, you agreed that there would be – or you agreed that there were some firearms that were used or possessed in order to accomplish that robbery, or that conspiracy, to commit a robbery . . ." (*Id.* at 23:21-24:12). The Court clarified that he was not part of the group that bought air pistols. (*Id.* at 24:9-12).

As a defendant may be found liable if it was reasonably foreseeable that his co-conspirators would use or possess a firearm in the furtherance of the conspiracy, the 18 U.S.C. § 924(c)(1)(A)(i) charge was proper as to the Defendant. Counsel was not ineffective for failing to raise a meritless issue. *See Gonzalez v. Knowles*, 515 F.3d 1006, 1017 (9th Cir. 2008) (trial counsel is not ineffective for failing to raise a meritless objection). Furthermore, Petitioner was not prejudiced because even if counsel had raised the issue, it would not have changed the outcome for Petitioner.

### 3. Failure to Investigate Witnesses

Petitioner contends that his defense counsel was deficient because he failed to investigate witnesses. This argument lacks merit. A defense attorney need not interview all possible witnesses to have performed within a reasonable range of professional conduct. *See Stankewitz v. Woodford*, 365 F.3d 706, 719 (9th Cir. 2004); *Hendricks v. Calderon*, 70 F.3d 1032, 1040 (9th Cir. 1995). The Ninth Circuit has recognized that "the duty to investigate and prepare a defense is not limitless: it does not necessarily require that every conceivable witness be interviewed . . ." *Hendricks*, 70 F.3d at 1040 (quoting *United States v. Tucker*, 716 F.2d 576, 584 (9th Cir. 1983)). Failure to interview a witness cannot establish ineffective assistance when the person's account "is otherwise fairly known to defense counsel." *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986). When the record clearly shows that counsel was well-informed, and the petitioner

fails to state what additional information would have been gained through further investigation, an ineffective assistance claim fails. *See id.*

Petitioner alleges that, during the sentencing hearing, defense counsel told Petitioner that there were a number of witnesses he should have interviewed in order to properly advise Petitioner. (Mot. at 2, 17-18). However, Petitioner fails to specifically identify any witnesses that should have been interviewed, and does not explain how the testimony of a particular witness would have helped his case. To the extent Petitioner appears to suggest that other witnesses might have helped to prove that he did not personally use a firearm, this claim fails because, as stated above, it was not necessary to show that Petitioner used a firearm.

Defense counsel, apparently speculating with regard to what witness Petitioner was referring to, states that he discussed with Petitioner the possibility and effect of using the testimony of a co-defendant, Jorge Cortes. (Torres Decl. ¶ 6). After considering defense counsel's assessment of the risks of using Cortes as a witness, Petitioner is asserted to have decided against using the statement. (*Id.*) Further, the record indicates that defense counsel was very familiar with the evidence that was presented because of the trial that had taken place in connection with some of the other defendants in this case. (Plea Hr'g Tr. at 18:5-12).

Thus, this Court finds that Petitioner has not sufficiently alleged that counsel was deficient in failing to identify potential witnesses, and fails to sufficiently allege that the failure to investigate a witness prejudiced his case.

### 4. Failure to File Pre-Trial Motions

Petitioner alleges that defense counsel failed to file pre-trial motions. (Mot. at 4, 18). The adversary system requires deference to counsel's informed decisions, and counsel's strategic choices must be respected if they are based on professional judgment. *Strickland*, 466 U.S. at 681. Decisions about filing motions are strategic decisions, and counsel may reasonably decide not to file a motion where it is likely to lose and could cause the lawyer to lose credibility with the judge. *Leavitt v.*

*Arave*, 646 F.3d 605, 611 (9th Cir. 2011). Petitioner does not sufficiently allege that trial counsel's failure to file additional pre-trial motions fell below the objective standard of reasonableness and prejudiced his case.

The record demonstrates that defense counsel filed or joined in motions on Petitioner's behalf. (Docket Nos. 71, 111, 134, 187). Further, based on his review of the discovery materials, examination of the entire docket, and discussions with co-counsel, defense counsel asserts that he determined that no additional pre-trial motions were required. (Torres Decl. ¶ 5). Petitioner mentions that counsel should have filed a Motion to Suppress the firearm on the grounds that the weapon was found in the vehicle belonging to a co-defendant. (Mot. at 4). To the extent that Petitioner is arguing that the gun should have been suppressed because the firearm charge was improper due to the fact that Petitioner claims that he did not possess the gun, this argument is meritless. As discussed above, the charge was proper as to Petitioner even if he did not personally possess a weapon. Petitioner fails to point to a potentially meritorious pre-trial motion, or specify how he was prejudiced as a result of counsel's omissions. Petitioner's conclusory allegations fail to show that defense counsel's performance was ineffective.

     *5. Failing to Conduct a Reasonable Investigation Into a Competency Defense.*

Petitioner further asserts that defense counsel failed to conduct a reasonable investigation into a competency defense. (Mot. at 18). This claim lacks merit. In determining whether a defendant is competent to stand trial, a court must determine if he (a) has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and (b) whether he has a rational as well as factual understanding of the proceedings against him. *Dusky v. United States*, 362 U.S. 402, 402 (1960). Trial counsel has a duty to investigate a defendant's mental state "if there is evidence to suggest that the defendant is impaired." *Douglas v. Woodford*, 316 F.3d 1079, 1085 (9th Cir. 2003).

Petitioner fails to sufficiently allege that a competency defense had any potential merit, much less that counsel should have been on notice of a potential competency defense. Here, defense counsel states that he inquired into Petitioner's mental health history and asked his family members whether they had ever seen anything that would give further cause for concern about his mental state and ability to comprehend. (Torres Decl. ¶10). Counsel states that he found that it was not necessary to pursue this avenue for Petitioner. (*Id.*) Petitioner provides no facts or arguments to indicate that this conclusion was unreasonable. Further, the Presentence Report's assessment of Petitioner's mental and emotional health states that, "the defendant reported no mental or emotional health problems and a review of investigative materials, jail records and input provided by a family member did not uncover any information to the contrary." (Gov. Ex. B at 9). Petitioner's allegation that defense counsel was deficient because he did not conduct a reasonable investigation into a competency defense is unsupported and contrary to the record. Petitioner has thus failed to sufficiently allege that counsel was ineffective for failing to further investigate a competency defense.

### 6. *Application of the Safety Valve*

Petitioner alleges that his defense counsel was ineffective in failing to argue for safety valve relief from his mandatory minimum sentence pursuant to 18 U.S.C. § 3553(f). Petitioner received a mandatory-minimum sentence of 60 months for the firearm offense. (Docket No. 414). A court may impose sentence without regard to a statutory minimum in certain cases, where the Court finds that: (1) the defendant does not have more than one criminal history point; (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (3) the offense did not result in death or serious bodily injury to a person; (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense and was not engaged in a continuing criminal enterprise; and (5) the

defendant has truthfully provided to the government all the information and evidence he has concerning the offense. 18 U.S.C. § 3553(f); *see also* U.S.S.G. § 5C1.2 (implementing 18 U.S.C. § 3553(f)); *United States v. Ferryman*, 444 F.3d 1183, 1185 (9th Cir. 2006).

Relief under 18 U.S.C. § 3553(f) is available only for "an offense under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846) or section 1010 or 1013 of the Controlled Substances Import and Export Act (21 U.S.C. 960, 963)." Here, Petitioner pleaded guilty to conspiracy to interfere with commerce by violence or extortion and possession of a firearm in the furtherance of a crime of violence. Neither offense is eligible for safety valve treatment. 18 U.S.C. § 3553(f). As Petitioner did not qualify for safety valve treatment, defense counsel was not ineffective for failing to argue a meritless position.

### 7. *Coercion and Misinformation With Regard to the Plea Agreement*

Petitioner has asserted that counsel was ineffective with respect to the Plea Agreement because counsel misinformed Petitioner and coerced him into accepting it. As discussed at length above, this claim must fail. Petitioner was provided accurate information by this Court with respect to his rights and the charges that he faced. This Court determined after extensive inquiry that Petitioner made a knowing, intelligent, and voluntary decision to plead guilty. Petitioner further suggests that he pled guilty because counsel was sick and unprepared for trial. (Mot. at 2). However, Petitioner does not point to any specific action or inaction by counsel that prejudiced his defense. Petitioner also did not raise any concerns about counsel's effectiveness or capabilities with this Court, despite having opportunities to do so, and did not request new counsel.

### C. Evidentiary Hearing

Unless the motion and the records of a case conclusively show that the prisoner is entitled to no relief, a court is required to grant a hearing. 28 U.S.C.

§ 2255(b). However, where the record demonstrates that a petitioner has failed to state a claim, or that the petitioner presents no more than conclusory allegations, a district court may deny a § 2255 motion without an evidentiary hearing. *Quan*, 789 F.2d at 715. Given the foregoing discussion, this Court finds that no evidentiary hearing is required.

### IV. CONCLUSION

Petitioner validly waived his right to collateral attack, except for claims of ineffective assistance of counsel. Petitioner has failed to demonstrate that defense counsel was ineffective in representing Petitioner. Petitioner's §2255 motion is therefore **DENIED**.

A court may issue a certificate of appealability where the petitioner has made a "substantial showing of the denial of a constitutional right," and reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). This Court finds that Petitioner has not made the necessary showing. A certificate of appealability is therefore **DENIED**.

**IT IS SO ORDERED.**

Dated: 7/18, 2014

HON. ROGER T. BENITEZ
United States District Judge